FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Jul 30 2021

KEVIN P. WEIMER , Clerk

By: s/Kari Butler
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| BRYANT L. COCHRAN, | : | MOTION TO VACATE |
| Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| | : | CRIMINAL ACTION NO |
| v. | : | 4:14-CR-0022-HLM-WEJ-1 |
| | : | |
| UNITED STATES OF AMERICA, | : | CIVIL ACTION NO. |
| Respondent. | : | 4:18-CV-0068-HLM-WEJ |

## **FINAL REPORT AND RECOMMENDATION**

Movant, Bryant L. Cochran, a federal supervised releasee,[1] has filed a pro se

28 U.S.C. § 2255 Motion to Vacate challenging his convictions and sentences in

Case No. 4:14-cr-0022-HLM-WEJ-1 for conspiracy against rights, deprivation of

rights under color of law, conspiracy to distribute methamphetamine, and witness

tampering. The matter is before the Court on the § 2255 Motion, the government's

---

[1] Movant completed his aggregate 60-month custodial sentence and was
released from confinement on September 19, 2019.  (See J. [95] at 3); Inmate
Locator, https://www.bop.gov/inmateloc/ (searching for "65994-019") (last visited
July 28, 2021).  Although movant is not physically in prison, he is still "in custody"
within the meaning of § 2255 because he is presently serving a three-year term of
supervised release.  (J. [95] at 5); United States v. Brown, 117 F.3d 471, 475
(11th Cir. 1997) (collecting cases and explaining that that supervised release
satisfies the 'in custody' requirement of § 2255).  Accordingly, movant's release
from custody did not moot the instant § 2255 proceedings.

Response, and movant's Reply.  For the reasons stated below, **IT IS RECOMMENDED** that the § 2255 Motion be **DENIED** and that no certificate of appealability issue.

## I.   PROCEDURAL HISTORY

On August 12, 2014, a federal grand jury returned a six-count Superseding Indictment charging movant with conspiracy against rights, in violation of 18 U.S.C. § 241 ("Count 1"); three counts of deprivation of rights under color of law, in violation of 18 U.S.C. § 242 ("Counts 2, 3, & 4"); conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846 ("Count 5"), and witness tampering, in violation of 18 U.S.C. § 1512 ("Count 6"). (Super. Indict. [18] at 1-5.)  Ultimately, movant proceeded to a seven-day jury trial. (See Min. Entries [54], [55], [56], [57], [58], [59], [60], [61].)  The Eleventh Circuit summarized the evidence adduced at trial as follows:

**A. Counts One, Four, Five, & Six: Cochran's Interactions with A.G.**

[ . . .] On April 9, 2012, A.G. went to the Murray County Magistrate's Office to apply for arrest warrants for three individuals who she claimed had attacked her the previous day.  A.G. had not met Cochran previously—although she was aware that he and her husband were friends—and Cochran invited her into his office alone.  During this meeting, and over the course of the following days, Cochran made a series of sexually suggestive and inappropriate comments towards A.G.

2

Subsequent to these interactions, A.G.'s husband told her that Cochran had said that she made sexual advances toward Cochran. A.G. explained that Cochran was lying and that it was in fact he who had sexually propositioned her. This caused A.G.'s husband to go to the local media. By mid-July it was widely known in Murray County that A.G. alleged that Cochran sexually propositioned her when she went to see him about a matter in his capacity as a magistrate. This was especially disadvantageous to Cochran because he was in the middle of a campaign for reelection to his position as a magistrate judge.

After A.G.'s allegations became known in the community, Cochran attempted to provide information to at least eight different law enforcement officers regarding A.G.'s use of methamphetamine. Testimony from these officers showed that Cochran described A.G.'s vehicle, informed them that she would likely be carrying methamphetamine, and stated that if they could arrest her it would really "help him out." The officers did not act on the tip.

During this time, Clifford Joyce was a tenant in a trailer park owned by Cochran. Joyce routinely used methamphetamine with A.G. Between August 2011 and August 2012 there were 339 telephone calls and 125 text messages between Cochran and Joyce. On several occasions, Joyce referred to Cochran as his boss and demonstrated a subservient role vis-à-vis Cochran, who appeared to be his employer. On August 12, 2012, at around 1:30 a.m., Joyce made an unannounced visit to A.G.'s trailer during which he acted "very nervously." He asked to use the bathroom and, after coming out, asked A.G. if she had a backdoor to her trailer. A.G. informed him that she did not, but that she had a side door and a back window. Joyce stated that he did not want anyone to see him leave and asked if he could leave by going out her back window. On that night A.G.'s car was parked near the window that Joyce went out when he left the trailer.

During the day and early evening of August 14, 2012, A.G. smoked methamphetamine. That evening as she was being driven home in her car, Deputy Sheriff Joshua Greeson pulled over her car. Greeson asked A.G. if she would consent to a search of her car, which she did. Deputy Sheriff Joe Wilkey heard over the radio that Greeson had

stopped A.G.'s car and, being familiar with the allegations against Cochran, went to offer assistance.  When Wilkey arrived, Captain Michael Henderson, the shift commander and Cochran's cousin, was already there but the search had not commenced.  Greeson and Wilkey began searching the car but initially did not find any contraband. While the search was in progress, Henderson twice called Cochran's cellphone but received no answer. One minute later Cochran returned Henderson's calls and they talked for one minute and forty-seven seconds.

Henderson then radioed Wilkey and told him to come to Henderson's patrol car.  Henderson explained that the information he received was that contraband would be located on the left side of the car in a metal box.  Wilkey relayed Henderson's information to Greeson, who went to the left side of the car and found methamphetamine in a metal box attached to the outside of the car under the driver's side.  Wilkey radioed Henderson that they found the methamphetamine under the car as described and immediately thereafter Henderson called Cochran and they spoke for about one minute.  A.G. was placed under arrest and charged with possession of methamphetamine.

The next day, Georgia Bureau of Investigation ("GBI") agents began investigating the circumstances surrounding A.G.'s arrest. On August 22, they interviewed Joyce for one hour and forty minutes.  After that interview, they advised the Murray County District Attorney what Joyce told them.  Upon hearing the details of Joyce's interview, the district attorney promptly dismissed the charge against A.G.

Also on August 22, GBI and FBI agents conducted interviews regarding A.G.'s arrest at the Murray County Sheriff's Office.  At 11:25 a.m. that day, Cochran called Henderson and they talked for six minutes and forty-seven seconds.  Later, at 5:01 p.m., they talked again for about twelve minutes.  Then, at about 6:00 or 7:00 p.m., GBI arranged to have Henderson come to the Sheriff's Office for an interview that evening.  Thereafter, at 7:26 p.m., Cochran and Henderson talked for ten minutes and nineteen seconds. Henderson's interview began shortly after 7:30 p.m.  During the interview, Henderson stated that Cochran was the source of the information

4

about where the methamphetamine would be found. Henderson stated that he did not know where Cochran had gotten his information. However, the next day, Henderson was interviewed again. He admitted that he had spoken to Cochran since the first interview and that Cochran told him that his source of information was Mike Winkler.

Winkler testified that he was acquainted with A.G. and was aware that she was using drugs, but said that he had no knowledge about where she hid drugs in or on her car. Winkler also knew Cochran. After Winkler learned that A.G. had been arrested, he met with Cochran. During the meeting, according to Winkler's testimony, Cochran asked Winkler to tell the GBI agents that Winkler had previously told Cochran where drugs would be found on A.G.'s car and that they would be in a metal or magnetic key box. Cochran also stated that if Winkler did so, it would help Cochran and possibly "keep him out of jail."

## B. Count Two: Cochran's Interactions with V.R.

In Count Two, Cochran was charged with, and subsequently convicted of, violating the constitutional rights of V.R. by sexually assaulting her. Cochran's conviction was based on testimony—primarily by V.R. and S.P.—that he: (a) pushed his hand inside V.R.'s pants and under her underwear; (b) put his hand under V.R.'s shirt and bra; (c) propositioned V.R. to have sex in the office bathroom; (d) rubbed his body against V.R. and rubbed his hand over V.R.'s body; and (e) felt V.R.'s leg under her skirt.

## C. Count Three: Cochran's Interactions with S.P.

In Count Three, Cochran was charged with, and subsequently convicted of, violating the constitutional rights of S.P. by searching her cellphone without permission on at least two occasions. The primary testimony on this issue came from two people: S.P. and court deputy marshal Kelly Thurman. S.P. testified that during her time at the court, she owned a personal cellphone—which she occasionally used for court business—that she and her husband purchased and for

which they paid the monthly bill.  She testified that she caught Cochran at her desk "looking through" her cell phone and, when she confronted him, he replied that because it "was on county property," he had the right to "access" the phone.  Thurman testified that he witnessed Cochran pick up S.P.'s cellphone and sit down at her desk "thumbing through it."  According to Thurman, S.P. confronted Cochran about what he was doing and Cochran responded that he was "just looking" before S.P. demanded that he return the phone.

United States v. Cochran, 682 F. App'x 828, 831-34 (11th Cir. 2018) (per curiam) (footnotes omitted).

The jury found movant guilty on all counts.  (Verdict [62] at 1.)  The District Court sentenced movant to an aggregate of 60 months' imprisonment, to be followed by three years' supervised release.  (J. [95] at 3-5.)

Movant appealed, arguing on appeal that (1) the District Court erred in excluding Erica Sanford's testimony about conversations she had with Mike Winkler, (2) there was insufficient evidence to establish the conspiracies alleged in Counts 1 and 5; (3) the District Court erred in excluding evidence of V.R.'s relationship with movant; (4) the constitutional violation alleged in Count 3 was not clearly established at the time of the offense; and (5) the District Court erred in denying movant's motion to sever Counts 2 and 3.  Appellant's Br. at 42-67, United States v. Cochran, No. 15-13230-EE (11th Cir. Oct. 14, 2015).  The Eleventh Circuit vacated movant's conviction on Count 3, but affirmed his convictions and

6

sentences on Counts 1, 2, 4, 5, and 6.  See Cochran, 682 F. App'x at 842.  The instant § 2255 Motion followed.

## II.    28 U.S.C. § 2255 MOTION

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences.  United States v. Jordan, 915 F.2d 622, 625 (11th Cir. 1990).  Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed on four different grounds, including "that the sentence was imposed in violation of the Constitution or laws of the United States."  Id.; see also 28 U.S.C. § 2255.  "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  United States v. Frady, 456 U.S. 152, 166 (1982).  A § 2255 movant bears at all times the burden of proving his entitlement to relief.  Beeman v. United States, 871 F.3d 1215, 1221-23 (11th Cir. 2017).  An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); Fontaine v. United States, 411 U.S. 213, 215 (1973).

7

### A.    Ground 1

In Ground 1 of the § 2255 Motion, movant argues that his trial counsel was ineffective for failing to file a pretrial motion challenging the sufficiency of the Superseding Indictment.  (Mot. [114] at 4.)  Specifically, movant asserts that the "willful sexual assault" charged in Count 2 was not a valid predicate for a § 242 offense, and that the government had created an unconstitutional "hybrid offense" combining portions of § 242 and 18 U.S.C. § 2241 (defining the offense of aggravated sexual abuse").  (Id. at 4-6.)  Movant further argues that that his conduct of placing personal drugs underneath a vehicle to support a false arrest does not constitute distribution, delivering, or  dispensing within the meaning of the Controlled Substances Act. (Id. at 7-8.)  Finally, movant contends that his conduct in requesting Winkler to lie about how he knew that A.G.'s vehicle would contain methamphetamine was at most obstruction of justice, in violation of 18 U.S.C. § 1503, but could not constitute witness tampering under § 1512 because he did not know that there was an investigation or that Winkler was a witness in it.  (Id. at 8-9.)

The government responds that each count of the Superseding Indictment tracked the language of the relevant statute and provided movant with "ample details" regarding what must be defended against and to support a double jeopardy claim in a future prosecution.  (Resp. [116] at 11.)  The government otherwise

argues that movant's contentions are meritless because he was not charged with sexual assault and that his counsel was not ineffective for failing to make meritless objections. (Id. at 11-12.)

Movant replies at length that Count 5 of the indictment "misappli[ed] the law," because his offense conduct of planting a controlled substance to frame another individual did not comport with the plain definition of "illicit trafficking" because no commercial dealing was involved, and the jury was not properly instructed as to this offense. (Reply [117] at 3-15.) Movant further reiterates his arguments that Count 2 failed to charge a crime because his conduct did not rise to the level of aggravated sexual abuse as defined in § 2241 and § 242 was not the appropriate vehicle to charge a sexual assault. (Id. at 16-29.)

The Sixth Amendment right to counsel includes the right to the effective assistance of competent counsel. McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). To make a successful claim of ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. Id. at 687-88. Prejudice occurs when there is a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Id. at 694. If the defendant makes an insufficient showing on the prejudice prong, the court need not address the performance prong, and vice versa. Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

An indictment is sufficient if it (1) presents the essential elements of the offense, (2) is sufficiently specific to inform the defendant of the charge against him, and (3) is sufficiently specific to enable him to plead double jeopardy in any future prosecutions for the same offense. United States v. Steele, 178 F.3d 1230, 133-34 (11th Cir. 1999). "[These] requirements are satisfied by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime." United States v. Bascaro, 742 F.2d 1335, 1348 (11th Cir. 1984), abrogated on other grounds by United States v. Lewis, 492 F.3d 1219, 1222 (11th Cir. 2007).

Section 241 of Title 18 provides that:

If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same . . . [t]hey shall be fined under this title or imprisoned not more than ten years, or both . . . .

18 U.S.C. § 241.

10

Count 1 of the Superseding Indictment charged that:

Beginning on a date unknown, but continuing until at least on or about August 15, 2012, in the Northern District of Georgia, defendant BRYANT L. COCHRAN (the Chief Magistrate Judge of Murray County, Georgia), knowingly and willfully conspired and agreed with others known and unknown, to injure, oppress, threaten, and intimidate A.G., in the free exercise and enjoyment of a right and privilege secured to her by the Constitution and laws of the United States, namely—the right to be free from an unreasonable search and seizure, by those acting under the color of law, in violation of Title 18, United States Code, Section 241.

(Super. Indict. [18] at 2-3.)

Additionally, Section 242 of Title 18 provides:

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . shall be fined under this title or imprisoned not more than one year, or both . . . .

18 U.S.C. § 242.

In comparison, Counts 2 and 4 of the Superseding Indictment charged, respectively:[2]

Beginning on a[n] earlier date, but continuing from on or about May 15, 2009[,] to in or about August 2012, in the Northern District of Georgia, defendant BRYANT L. COCHRAN (the Chief Magistrate

---

[2] As noted above, movant's § 242 conviction on Count 3 was vacated by the Eleventh Circuit on direct appeal. See Cochran, 682 F. App'x at 842.

11

Judge of Murray County, Georgia), while acting under color of law, knowingly and willfully deprived Murray County employee V.R. of a right secured and protected by the Constitution and laws of the United States, namely—the right not to be deprived of liberty without due process of law, including the right to be free from wil[l]ful sexual assault; in violation of Title 18, United States Code, Section 242.

From on or about August 14 to 15, 2012, in the Northern District of Georgia, defendant BRYANT L. COCHRAN (the Chief Magistrate Judge of Murray County, Georgia), aided and abetted by others known and unknown, while acting under color of law, knowingly and willfully deprived A.G. of a right secured and protected by the Constitution and laws of the United States, namely—the right to be free from an unreasonable search and seizure, in that: the defendant caused A.G. to be arrested for possessing methamphetamine, knowing that A.G. did not knowingly possess said methamphetamine; in violation of Title 18, United States Code, Sections 2 and 242.

(Super. Indict. [18] at 3-4.)

As to conspiracy to distribute a controlled substance, Sections 841(a)(1), (b)(1)(c), and 846 of Title 21 provide:

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . .

In the case of a controlled substance in schedule I or II, . . . such person shall be sentenced to a term of imprisonment of not more than 20 years . . . , a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both.

Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those

prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846.

Comparatively, Count 5 of the Superseding Indictment charged:

Beginning on a date unknown, but continuing until at least on or about August 14, 2012, in the Northern District of Georgia, defendant BRYANT L. COCHRAN (the Chief Magistrate Judge of Murray County, Georgia), knowingly conspired and agreed with others known and unknown, to violate Title 21, United States Code, Section 841(a)(1); that is—to distribute a controlled substance, said conspiracy involving a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and 846.

(Super Indict. [18] at 4-5.)

Finally, 18 U.S.C. § 1512 provides:

Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer . . .information relating to the commission or possible commission of a Federal offense . . . shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(b)(3).

Similarly, Count 6 of the Superseding Indictment charged:

In or around August 2012, in the Northern District of Georgia, defendant BRYANT L. COCHRAN, knowingly attempted to corruptly persuade J.M.W. by asking him to provide false information to law enforcement officers, with the intent to hinder, delay, and

13

prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission and possible commission of a Federal offense, that is—a Conspiracy against Rights as charged in Count I, in violation of Title 18, United States Code, Section 1S12(b)(3).

(Super. Indict. [18] at 5.)

Because the language of the Superseding Indictment: (1) directly tracks the language of the relevant statutes; (2) sets forth the essential elements of the charged offenses; and (3) is sufficiently specific to inform movant as to the nature of the charges against him, the Superseding Indictment is constitutionally sufficient. See Steele, 178 F.3d at 133-34; Bascaro, 742 F.2d at 1348.

To the extent that movant argues that Count 2 failed to allege a crime because "sexual assault" is not a "predicate" listed in § 242, Count 2 in fact charged that movant deprived V.R. of her due process liberty right to be free from willful sexual assault.  Further, to the extent that movant argues that § 242 is not the proper vehicle to charge what he characterizes as essentially a sexual assault, the Fourteenth Amendment right to bodily integrity includes a due process right to be free from sexually motivated physical assaults and coerced sexual activity at the hands of state officials.  See, e.g., United States v. Lucas, 157 F.3d 998 (5th Cir. 1998) (determining appropriate sentencing guideline for defendant, the warden of a county jail, who pleaded guilty to a violation of § 242 for depriving victim of the

14

"right to be free of unwanted sexual intercourse"); Rogers v. City of Little Rock, Ark, 152 F.3d 790, 796 (8th Cir. 1998) (collecting cases and explaining that such sexual abuse includes sexual contact not physically forced upon an individual, but gained through coercion by the state official's status and intimidation). Because Count 2 of the Superseding Indictment charged that movant willfully deprived V.R. of her due process rights by sexually assaulting her under color of state law, it sufficiently charged a § 242 offense.

Movant's remaining contentions that (1) he was not charged with or his conduct did not rise to the level of "aggravated sexual abuse" within the meaning of the enhanced penalty provision of § 242, (2) placing personal drugs under a car to allow police to stage an arrest was not distribution, dispensing, or delivering within the meaning of § 841(a)(1), and (3) he could not engage in witness tampering where he did not know of the investigation and witness, do not call into question the validity of the indictment. At bottom, these are actually challenges to whether the evidence was sufficient to support his convictions for Counts 1, 2, 4, 5, and 6—an issue already specifically resolved against him on direct appeal with

respect to Counts 1, 4, 5, and 6.[3]  See Cochran, 682 F. App'x at 836-37.  Because

the Superseding Indictment was constitutionally sufficient, movant's counsel was

not ineffective for failing to raise a meritless challenge to the indictment.  See

Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) ("it is axiomatic that

the failure to raise non-meritorious issues does not constitute ineffective

assistance").  This ground does not warrant relief.

**B.    Ground 2**

In Ground 2, movant argues that his trial counsel was ineffective for failing

to present evidence that he was involved in a nearly eight-year consensual sexual

relationship with V.R.  (Mot. [114] at 11-12.)  Movant notes that his counsel

declined to present this evidence, but chose instead to adopt a strategy based on

---

[3] To the extent the Motion to Vacate, movant's attached Addendum, and movant's Reply could liberally be construed to raise interposing claims that the evidence was insufficient to support his convictions or that the District Court gave improper jury instructions, such claims are procedurally barred because they were either raised and disposed of on direct appeal or they could have been raised on direct appeal.  (See generally, Mot. [114] at 5-10; Addendum [114-1] at 11-16, 25-27; Reply [117] at 3-29); United States v. Nyhuis, 211 F.3d 1340 (11th Cir. 2000) ("The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal."); Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004) ("Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a []§ 2255 challenge" unless the movant shows "both cause for his default as well as demonstrating actual prejudice suffered as a result of the alleged error.").

attacking V.R.'s credibility through cross-examination. (Id. at 12.) Movant states that he had made counsel aware of the affair, but admits he "grieved to [counsel] that he would rather his wife who was sitting in the courtroom at the time of the trial not be exposed to the affair if he could[.]" (Addendum [114-1] at 20.) Notwithstanding these instructions, movant states that counsel should have advised him that he could not effectively defend the charge without presenting evidence of the affair. (Id.) Movant contends that, if this information had been presented to the jury, he would have been acquitted of "aggravated sexual assault." (Mot. [114] at 13.)

The government responds that trial counsel's strategy to attack V.R.'s credibility rather than present evidence of an affair was reasonable and was apparently dictated by movant himself. (Resp. [116] at 13-14.) The government notes that trial counsel effectively cross-examined V.R. and asserts that movant has not shown prejudice in light of the highly prejudicial nature of V.R.'s trial testimony. (Id. at 14-15.)

In his Reply, movant emphasizes that he successfully preserved a consent defense in his pretrial Fed. R. Evid. 412 proceedings, but that his counsel failed to present that defense at trial. (Reply [117] at 21.) Movant again acknowledges that he "inquired to [counsel] on whether the infidelity can be shielded from his wife[,]"

17

but states that he would have presented a consent defense if his counsel had correctly informed him that his choice was to admit the affair or go to prison. (Id.) Movant states that counsel could have presented testimony from Erica Sanford, "Mark & Jenny Baker," and Melissa Flood, as well as evidence from his and V.R.'s cell phones that would have proved the existence of a consensual affair. (Id. at 22.)

As an initial matter, movant's reference to "aggravated sexual assault" again appears to refer to his conviction on Count 2 for deprivation of rights under color of law, in violation of 18 U.S.C. § 242, based on his depriving V.R. of her due process right to be free from willful sexual assault. (Compare Mot. [114] at 11-12, with Super. Indict. [18] at 3.)

While counsel has authority to manage most aspects of the defense without obtaining his client's approval, counsel "undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy." Florida v. Nixon, 543 U.S. 175, 187 (2004) (quotation marks omitted); see also McCoy v. Louisiana, 138 S. Ct. 1500, 1508 (2018) (explaining that "a defendant need not surrender control entirely to counsel" because counsel, "however expert, is still [only] an assistant"). Counsel's trial strategy decisions may be limited by a client's express prohibition, and, while counsel may violate a defendant's right to autonomy by deciding certain fundamental decisions regarding

18

the case without the defendant's ultimate authority, "it does not follow that counsel violates a defendant's right to effective counsel by yielding to the defendant's ultimate authority in either a trial strategy or a fundamental decision." See Taylor v. Steele, --F.4th--, 2021 WL 3137968 at *5 (8th Cir. 2021) (holding that habeas petitioner could not show deficient performance where counsel followed petitioner's express direction not to present closing argument during the penalty phase of a capital murder trial); see also United States v. Wellington, 417 F.3d 284, 289 (2d Cir. 2005) ("[T]o the extent that defendant instructed his counsel to pursue a course of action that defendant now complains of, there was no abridgement— constructive or otherwise—of defendant's Sixth Amendment right to effective assistance of counsel.").

Here, movant twice admits in his pleadings that he directed his counsel not to pursue a consent defense to Count 2 because he did not want his wife to learn about the alleged affair. (Addendum [114-1] at 20; Reply [117] at 21-22.) This is consistent with the Eleventh Circuit's findings on direct appeal that "Cochran never conceded that any of the events in questioned happened and, accordingly, never so much as hinted that they were consensual in nature," and that he "clearly never sought to present" a consent defense. See Cochran, 682 F. App'x at 838. Because movant directed his counsel not to pursue a consent defense, and counsel

19

acquiesced to that direction, movant cannot show that his counsel's performance was deficient.  See Taylor, 2021 WL 3137968 at *5; Wellington, 417 F.3d at 289. Ultimately, movant cannot direct his counsel to pursue a certain trial strategy and then prevail on an ineffective assistance claim because his counsel pursued that very strategy.

In any event, movant has not shown that his counsel's decision to attack V.R.'s credibility fell below an objective standard of reasonableness, or that he was prejudiced by not presenting evidence of other, consensual sexual encounters where V.R. testified at trial to specific instances of nonconsensual sexual acts.  See, e.g., Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994) ("When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate.  And, a court should be highly deferential to those choices that are arguably dictated by a reasonable trial strategy.") (internal quotations, citation, and alteration omitted).  Movant is not entitled to relief on this claim.

## C.    Ground 3

In his third ground for relief, movant argues that his trial counsel was ineffective for failing to call Clifford Joyce as a witness.  (Mot. [114] at 15.) Movant contends that Joyce's testimony would establish that he was never in actual

20

or constructive possession of the drugs planted under A.G.'s car, that he did not make sufficient overt acts to subject him to conspiracy liability, and that this was not the type of conduct generally punishable under the Controlled Substances Act. (See id. at 15-16.)  Movant states that Joyce's testimony "could have significantly aided in the defense of the [§ 846]" offense.  (Id. at 16.)

The government responds that movant has offered no evidence, other than his own speculation or conjecture, of what Joyce's actual testimony would have been.  (Resp. [116] at 16.)  The government further argues that counsel made a reasonable strategic decision not to call Joyce because (1) he would have been subject to cross-examination on his criminal history, including his guilty plea to planting drugs under A.G.'s car, (2) not calling Joyce allowed counsel to argue to the jury that the drugs were not planted at all but belonged to A.G., (3) not calling Joyce allowed counsel to attack the strength of the government's evidence as to the existence of the conspiracy, and (4) not calling Joyce prevented Joyce from having an opportunity to inculpate movant.  (Id. at 18-19.)  Consequently, the government asserts that movant has not shown deficient performance or prejudice.  (Id. at 19.)

In his Reply, movant reiterates his argument that Joyce merely took some of his own personal methamphetamine and placed it under A.G.'s car in order to frame her, which was at most simple possession of methamphetamine, and not possession

21

with intent to distribute, because neither he nor Joyce cultivated, manufactured, or sold any controlled substances. (Reply [117] at 6, 9, 12, 14.)  Based on this theory, movant contends that Joyce would have testified that movant played no role in obtaining the methamphetamine, which would have defeated the §§ 841 and 846 offense as a matter of law.  (Id. at 14-15.)

"Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision" that "will seldom, if ever," serve as grounds to find counsel constitutionally ineffective.  Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004).  Additionally, "complaints of uncalled witnesses are not favored . . . because allegations of what a witness would have testified are largely speculative."  Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).  Here, movant has not presented any evidence, by affidavit or otherwise, as to the substance of Joyce's purported testimony.  See Alexander v. Duggar, 841 F.2d 371, 375 (11th Cir. 1988) (holding that counsel was not ineffective for failing to call certain witnesses where the petitioner did not proffer any evidence to suggest that the witnesses would have given favorable testimony).  As a result, this ground is entirely speculative, and does not warrant relief.  See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (explaining that a petitioner is not entitled to federal habeas relief "when his claims are merely conclusory allegations").

### D.    Ground 4

Finally, in Ground 4, movant argues that his counsel was ineffective for failing to review the Sentencing Guidelines and the possible sentences that could be imposed by the Court.  (Mot. [114] at 19.)  Movant states that he was never given any advice about what his guideline range might be, and had he been properly informed, he could have sought to enter a negotiated plea mid-trial.  (Id.)  Petitioner notes that he did not object to his counsel seeking to negotiate a plea deal mid-trial where he would plead guilty to a misdemeanor as to Garmley and would serve no jail time, but that the government rejected this proposed deal.  (Id. at 20.)

The government responds that the United States never made movant a plea offer, and, consequently, trial counsel could not have been ineffective during plea negotiations when there were no plea negotiations.  (Resp. [117] at 20-21.)  The government also notes that the record does not support the assertion that movant was interested in pleading guilty.  (Id. at 20-21, 20 n.12.)  Movant does not specifically address this ground in his Reply.  (See generally Reply [117].)

The Sixth Amendment right to the effective assistance of counsel extends to the plea-bargaining process.  Lafler v. Cooper, 566 U.S. 156, 162 (2012).  To prevail on an ineffective assistance claim in the plea context, a defendant must show the outcome of the plea process would have been different with competent

23

advice. Id. at 163. However, "defendants have no right to be offered a plea[,]" and, when no plea officer is made "the issue [of whether counsel provided effective assistance during the plea process] simply does not arise." Id. at 168.

Here, movant admits that the government never made him a plea offer, and that the misdemeanor and no-jail-time deal he attempted to negotiate mid-trial was summarily rejected by the government. (Mot. [114] at 19.) Because the government never made a plea offer, movant has not shown how he was prejudiced by counsel's purported failure to advise him about his sentencing exposure, or how counsel could otherwise have performed deficiently with respect to the plea process. See Lafler, 566 U.S. at 168.

Moreover, the record belies movant's assertions that, but for counsel's alleged failure to advise him about his sentencing exposure, he "could have" pled guilty. See, e.g., Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (holding that, to show prejudice in the plea context, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial") (citations and alteration omitted). Notably, movant does not state that he "would have" pled guilty, or even would have "seriously considered" pleading guilty, but only that he "could have" pled guilty. Cf. Cook v. United States, 189 F. App'x 927, 931 (11th Cir. 2006) (finding

24

that the movant's after-the-fact statement that he would have pleaded guilty, without more, was insufficient under to establish prejudice); Oliver v. United States, 292 F. App'x 886, 887 (11th Cir. 2008) (finding that an after-the-fact claim that the defendant would have "seriously considered" a plea offer, if counsel had informed him of the offer, was insufficient to show a reasonable probability that the defendant would have accepted the offer).

Prior to his seeking a nonstarter mid-trial deal to plead guilty to a single misdemeanor and serve no jail time, the record is devoid of any instance that movant demonstrated an amenability to pleading guilty. At trial, movant maintained his innocence and pursued a theory that, beyond receiving unsolicited inappropriate text messages from Garmley, none of the alleged acts took place. See Cochran, 682 F. App'x at 838; (Tr. [76] at 24-37; Tr. [81] at 32-55.) Even in the instant § 2255 Motion, movant continues to argue strenuously that he was legally innocent or overcharged with respect to multiple offenses of conviction. (See, e.g., Mot. [114] at 4-6 (arguing that Count 2 of the indictment fails to allege a crime); Mot. [114] at 11-13 (arguing that the conduct underlying Count 2 was consensual); Mot [114] at 7-8, 15-16 and, Reply [117] at 6, 9, 12, 14 (arguing that his conduct underlying Count 5 did not fall within the scope of §§ 841(a)(1) and 846 and, at most, constituted simple possession); Mot. [114] at 8-9 (arguing that his conduct

25

underlying Count 6 was, at most, simple obstruction and not witness tampering).)
On this record, movant has not met his burden of showing a "reasonable probability" that he would have entered an open guilty plea to the six charges in the Superseding Indictment.  See Coulter, 60 F.3d at 1504.  Movant is not entitled to relief on this claim.

Because movant is not entitled to relief on any of the four grounds presented in the § 2255 Motion, **IT IS RECOMMENDED** that the § 2255 Motion be **DENIED**.

## III.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed

further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Because reasonable jurists would not debate the resolution of the issues presented, **IT IS FURTHER RECOMMENDED** that a COA be **DENIED**. See id. If the District Court adopts this recommendation and denies a certificate of appealability, movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. foll. § 2255, Rule 11(a).

IV.   **CONCLUSION**

For the reasons stated above, **IT IS RECOMMENDED** that the 28 U.S.C. § 2255 Motion [114] be **DENIED** and that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to terminate the referral to the undersigned United States Magistrate Judge.

**SO RECOMMENDED**, this 30th day of July, 2021.

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE